UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:18-cv-_____

SHERA HODGSON WILLIAMS,

    Claimant in Arbitration,
v.

NORWEGIAN CRUISE LINES
    (Bahamas) LTD.,

    Respondent in Arbitration.
_____/

## CLAIMANT'S MOTION TO VACATE ARBITRATION AWARD

Claimant SHERA HODGSON WILLIAMS ("Claimant") requests entry of an order which vacates the *Final Award* delivered on April 10, 2018 (attached hereto as Exhibit "A") in an arbitration between herself and Respondent NORWEGIAN CRUISE LINES (Bahamas) LTD. ("Respondent"), ICDR Case No. 01-16-0002-6900. Claimant asserts that the arbitral forum exceeded its authority by making factual findings and reaching legal conclusions for which it had no authority; the *Final Award* contravenes United States public policy; and its holdings are arbitrary, capricious and manifestly erroneous.

### JURISDICTION, VENUE and STANDARDS FOR RELIEF

1.    Respondent incorporated an arbitration clause into Claimant's employment contracts by virtue of reference to a purported collective bargaining agreement. Claimant is a citizen of Nicaragua. As such, these proceedings are governed by Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), as

implemented by Chapters 1 and 2 of Title 9, U.S.C. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

2.  This Court has subject matter jurisdiction. *Id.*; 9 U.S.C. § 203.

3.  Venue for this *Motion to Vacate* lies in the Southern district of Florida because the *Final Award* was made in Miami, Florida, and this *Motion* is timely because it is being served on July 10, 2108, within three months of delivery of the *Final Award.* 9 U.S.C. §§ 10(a), 12; Ex. "A", p. 19.

4.  Article V of the Convention provides that this Court may refuse to enforce an arbitration award governed by the Convention if "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." Art V, § 1.(c). *Compare* 9 U.S.C. § 10(a)(4) (an arbitration award may be vacated when "the arbitrators exceeded their powers… ."), 9 U.S.C. § 208 (incorporating provisions of Title 9, Chapter 1 which do not conflict with the Convention).

5.  The Convention further provides that this Court may refuse to enforce an arbitration award if "[t]he recognition or enforcement of the award would be contrary to the public policy of [the forum] country." Art V, § 2(b). *Compare Peco Foods v. Retail Wholesale & Dep't Store Union*, Case No. 17-13269, *6 (11th Cir. March 15, 2018) (unpublished) ("A court may refuse to enforce an arbitration award on public policy grounds… .").

2

6. Finally, this Court may refuse to enforce an arbitration award when the award in question contains manifest legal error, or it is an arbitrary or capricious decision. *B.L. Harbart Intern., LLC v Hercules Steel Co.*, 441 F.3d 905, 910 (11th Cir. 2006); *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992).[1]

## PROCEDURAL HISTORY and UNDISPUTED FACTS[2]

7. From October 29, 2012 until March of 2016, Respondent employed Claimant as a server aboard its cruise ships. *See* Ex. "A" at 2-3. Throughout that time Claimant was a member of the crews of Respondent's vessels, and as such held the legally protected "seaman" status as defined by the General Maritime Law ("GML") of the United States.

8. On or about July 2, 2013 Claimant suffered the onset of back pain while in the service of Respondent's cruise ship.[3] *See* Ex. "A" at 5.

---

[1] *But see Frazier v. Citifinancial Corp.*, 604. F.3d 1313, 1324 (11th Cir. 2010) (holding, on behalf of the entire Eleventh Circuit, that non-statutory grounds to vacate arbitration awards would no longer be recognized). Notably, *Frazier* was a panel opinion and as such its assertion is invalid. In this Circuit it is fundamental that a subsequent panel of the court cannot overrule a prior panel's decision. *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting *en banc* or by the Supreme Court.").

[2] These following undisputed facts and subsequent items of contested evidence are all set forth in Exhibit "A", the *Final Award*, except for ¶17, which is documented in Exhibit "B".

[3] The Parties dispute the cause of the Claimant's sudden back pain. Claimant testified that she slipped on salad dressing while carrying a heavily-loaded serving tray and twisted her back. Respondent successfully denied that this incident ever occurred (based entirely on hearsay statements in hearsay documents, which Claimant had sought to exclude).

9. Respondent provided an MRI examination and treatment by orthopedic knee and shoulder specialist Dr. James Voglino, a member of Respondent's retained medical network in Miami. The MRI and Dr. Voglino confirmed that Claimant had suffered a protruding inter-vertebral disc between her L5 and S1 vertebrae. *See* Ex. "A" at 5-6.

10. Over the next three years Claimant continued to suffer back pain of varying severity. *See* Ex. "A" at 6-9. Several times she reported to the ship's infirmary, where she was treated with simple pain killers. *See* Ex. "A" at 6-9. At another point her symptoms were so severe that Respondent's ship's physician prescribed that Claimant should cease her duties and return to her home country of Nicaragua for medical care. *See* Ex. "A" at 6-7. Claimant protested to the Staff Captain because she needed to continue earning wages. *See* Ex. "A" at 7. Respondent therefore arranged for Dr. Robert Sedaros to evaluate Claimant. In this examination Claimant denied having any symptoms at all and was returned to duty. *See* Ex. "A" at 7-8

11. In and June 2016 Respondent arranged another lumbar MRI for Claimant medical care for her back under the auspices of another member of its Miami medical network, Dr. Rolando Garcia, and had provided another MRI. *See* Ex. "A" at 9-10.

12. As of July 2016, none of Claimant's treating physicians – all of whom had ongoing business relationships with Respondent – had ever declared that Plaintiff had reached the point of Maximum Medical Cure ("MMC").[4] *See, e.g.,* Ex. "A", *passim.*

---

[4] MMC is a maritime law term of art roughly equivalent to the shoreside phrase "maximum medical improvement."

13.     In July 2016, as allowed by the GML, Claimant elected to treat with a physician of her own choosing, orthopedic surgeon Dr. Thomas Roush. *See* Ex. "A" at 10.

14.     Based on Claimant's 2013 and 2016 MRI's, Dr. Roush performed a bilateral L5-S1 microdiscectomy on September 30, 2016.  *See* Ex. "A" at 10-11.

15.     In 2016 Claimant asserted claims against Respondent for personal injury damages on the basis of negligence under the Jones Act, 46 U.S.C. § 30104, and strict liability under the GML doctrine of Unseaworthiness. She also sought payment for her 2016 surgery under the doctrine of Cure (the duty of a seaman's employer to provide her medical care), as well as separate damages and attorneys' fees arising from Respondent's refusal to fulfill its Cure obligation. *See* Ex. "A" at 1-2.

16.     At Respondent's request and prior to the final hearing, Claimant submitted to a compulsory expert examination by Dr. Amar Rajadhyaksha, an expert witness with long standing ties to both Respondent and Respondent's counsel. *See* Ex. "A" at 11.

17.     In October 2017 Respondent conceded, in the deposition of its corporate representative, both that Claimant was still receiving maintenance and cure benefits with regard to different medical issues which arose in March 2016, and that Respondent had authorized payment for Dr. Roush (albeit at the discounted rates of health insurers). *See* Ex. "B", Deposition of Respondent through representative Marlen Palmero, at 107-108, 110.

18. The arbitration went to final hearing over the course of December 13-15, 2107. *See* Ex. "A" at 1.

### PERTINENT CONTESTED TESTIMONY

19. Dr. Roush testified that the 2016 MRI revealed a herniated L5-S1 disc and inflamed corresponding nerves, and that the 2013 MRI was basically the same. *See* Ex. "A" at 10-11.

20. Dr. Roush further testified that during surgery he personally saw a full thickness tear of Claimant's L5-S1 disc, which he documented in his operative report. *See* Ex. "A" at 12.

21. Dr. Rajadhyaksha, Respondent's paid litigation expert, testified that he did not observe disc herniations or inflamed nerves on either of the MRI scans. He claimed not to see the full thickness tear of Claimant's L5-S1 disc and that such a tear "would expected to be seen" [sic]. *See* Ex. "A" at 12.

22. Dr. Rajadhyaksha testified instead that the MRI's revealed only a disc "protrusion" and desiccation resulting from natural degenerative changes, which are supposedly normal and common among people in the age range from their 30's to their 50's. *See* Ex. "A" at 12.

23. As of July 3, 2013, Claimant was only 28 years old. *See* Ex. "A" at 2.

24. Dr. Rajadhyaksha testified that Claimant's sudden onset of pain in July 2013 resulted only from these alleged degenerative changes. *See* Ex. "A" at 5.

25.     Based in part on this testimony, the arbitral forum determined that Claimant's 2016 surgery was not medically necessary or indicted, that it constituted palliative medical care, and that Claimant had reached MMC (without assigning a date therefore or any purported evidence supporting this conclusion). MMC. *See* Ex. "A" at 13, 17.

26.     Respondent offered no evidence, either through Dr. Rajadhyaksha or otherwise, that an MRI will always perfectly reveal the exact condition of their targets; that they will always pick up existing spinal disc herniations in particular; or, most significantly, that any mechanical diagnostic technique is better than (or even as good as) actually looking at an intervertebral disc during surgery in order to assess its actual condition. *See, e.g.,* Ex. "A," *passim.*

## THE FINAL AWARD

27.     The *Final Award* denied all of Claimant requests for relief.[5]  *See* Ex. "A" at 19.  It adopted each and every argument presented by Respondent, without question, on the basis of paid expert witness testimony and hearsay statements tendered by Respondent within hearsay documents.  It completely rejected all of Claimant's testimony and all of Dr. Roush's testimony. *See* Ex. "A," *passim.*

---

[5] And, the *Final Award* does not stop there:  it accuses Claimant of fabricating her accident, of lying to almost all of her physicians, and of undergoing a general anesthesia, spine-deforming surgery exclusively for purposes of "this litigation."  The *Final Order* insinuates that Claimant's counsel unethically steered her to Dr. Roush.  It expressly accuses Dr. Roush, a Florida-regulated physician, of performing an unnecessary surgery, of lying then he testified that he actually observed a full thickness tear of Claimant's L5-S1 disc with his own eyes, and of fabricating his operative report.

28. The arbitral forum justified its refusal to award any Cure benefits with its contested, after-the-fact conclusion that Claimant's surgery was not medically necessary, did not improve her medical condition and, as such, constituted palliative care beyond the scope of Respondent's Cure obligation. *See* Ex. "A" at 17.

29. To the contrary, and without citing any evidence, the *Final Award* "found" that Claimant had reached MMC at some unspecified time in the past. *See* Ex. "A" at 13.

30. The Arbitrator did not have lawful authority to make these determinations. Further, these determinations contravene well established and well known United States public policy, and they are manifestly erroneous, arbitrary and capricious.

## MEMORANDUM OF LAW

Under the General Maritime Law of the United States, a seaman's employer must provide medical care for illnesses, injuries and other medical problems which arise in the course of her service to the vessel.

> Maintenance and cure is an ancient duty under the law of admiralty that arises against a shipowner in favor of a seaman who becomes ill, injured, or incapacitated, or whose condition becomes aggravated or enhanced for any reason, at least until the time that the seaman has achieved maximum medical recovery . . . Admiralty courts have traditionally been liberal in interpreting the scope of this duty… . The seamen are wards of this Court and maintenance and cure should be afforded as long as there is any ambiguity or uncertainty about the continuation of that status… . "The nature and foundations of the liability required that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes." *Aguilar v. Standard Oil Co.*, 318 US 724, 735, 63 S.Ct. 930, 87 LED. 1107 (1943).

*Duarte v. Royal Caribbean*, 761 So. 2d 367, 368 (Fla. 3d DCA 2000). The termination point for the employer's Cure obligation, maximum medical improvement, or Maximum Medical Cure, is defined as the point when it appears that the seaman will no longer benefit from curative medical treatment. *Vella* v. *Ford Motor Co.,* 421 U.S. 1, 5 (1975); *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir., 1990); *Morales* v. *Garijak, Inc.,* 829 F.2d 1355 (5th Cir. 1987); *Gaspard v. Taylor Diving & Salvage Co., Inc.,* 649 F.2d 374 n. 3 (5th Cir.1981); *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979). Curative medical treatment is, in turn, defined as care which designed to improve the seaman's condition, as opposed to palliative care which treats only symptoms. *See, e.g. Muruaga* v. *United States,* 172 F. 2d 318, 321 (2d Cir. 1949). Thus, determinations of MMC and the curative nature of proposed medical care are two sides of the same coin: if there is curative treatment available to the seaman, then by definition she has not reached MMC.

While a seaman is not entitled to palliative care *after* reaching MMC, the seaman *is* entitled to both curative *and* palliative care *before* reaching MMC. *Smith v. Delaware Bay Launch Serv., Inc.*, 972 F.Supp. 836, 851 (D.Del. 1997); *Nurkiewicz v. Vacation Break U.S.A., Inc.*, 771 So.2d 1271, 1273 (Fla. 4th DCA 2000). Moreover, if a seaman receiving maintenance and cure for one medical problem (i.e., not yet MMC) suffers new, different medical problems, that seaman is also entitled to Cure for those new problems. *Duarte v. Royal Caribbean*, *supra,* 761 So. 2d at 368.

To be effective, an MMC declaration *must* be clear and unequivocal. *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir., 1990); *Tullos v. Martin Drilling Co.*, 750 F.2d 380, 385 (5th Cir. 1985). Adjudicators *must* resolve any doubts or ambiguities about the curative nature of requested treatment in favor of the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 530-331 (1962); *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 730 (1943)*; Duarte, supra,* 761 So. 2d at 368. *See also*, *Atlantic Sounding Co., Inc. v. Townsend*, 129 S.Ct. 2561 (2009). "[W]hen there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure], they are to be resolved in favor of the seaman." *Vaughan, supra*, 369 U.S. at 532.

Thus, the GML on the entitlement to Cure is quite clear and quite simple: if the treating medical professionals have not clearly, unequivocally and unanimously declared that a proposed course of treatment would be merely palliative, then the seaman is entitled to that treatment. "[T]he breadth and inclusiveness" of a shipowner's duty to pay maintenance and cure "assure its easy and ready administration for [i]t has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Vella, supra,* 421 U.S. at 4.

Finally, as expressly noted in the *Final Award*, MMC determinations fall exclusively within the province of the seaman's treating physicians: "Whether a particular seaman has reached MMC *is strictly a medical question to be determined by the medical professionals*." Ex. "A" at 17 (emphasis added). Judges and arbitrators are neither qualified nor legally entitled to make this determination.

The arbitral forum was aware of all of the foregoing, well established legal principals; indeed, most of the foregoing citations and propositions were lifted directly from the *Final Award* itself. Moreover, Claimant submitted pre- and post-final hearing bench briefs which set them forth and then reiterated them. Yet, the arbitral forum simply ignored them all.

First, the *Final Award* completely ignores the fact that had never been a clear and unequivocal declaration that Claimant had achieved MMC before her surgery (let alone any clear and unequivocal declaration); not even by Respondent's own doctors had done so. To the contrary, the *Final Award* expressly and completely ignores the opinion of Claimant's treating surgeon, Dr. Roush, that Claimant had ***not*** reached MMC before her surgery. Second, in the same way, the *Final Award* ignores – does not even address - the arbitral forum's duty, as a matter of public policy, to resolve all doubts and ambiguities in favor of Claimant and her right to receive Cure. Third, the *Final Award* likewise ignores the arbitral forum's duty, as a matter of public policy, to protect Claimant as a ward of admiralty.

Fourth, the arbitral forum substituted its own judgment that Claimant's surgery was only palliative for that of Claimant's treating surgeon, in blatant disregard of its own recognition that a determination of "MMC ***is strictly a medical question to be determined by the medical professionals***." Fifth, in substituting its judgment for that of the treating medical professionals, the arbitral forum looked backwards after surgery to

assert that – in its own opinion – the surgery had not been unsuccessful and was therefore palliative. That is not and cannot be the test: the curative nature of care must be assessed looking forward, before the care is rendered, to assess whether it expected to improve the seaman's condition. Otherwise, every ship owner would wait to see the outcome of a seaman's medical care and then deny payment if it had any basis to assert that the treatment had been unsuccessful.

Sixth, the arbitral forum deemed itself to be a medical professional yet again when it declared - without citing any evidence whatsoever – that "Claimant has now reached maximum medical cure ("MMC") for her back pain." Ex. "A" at 13. Instead of citing evidence (there was none to cite), and even though no treating physician ever issued an MMC declaration, the arbitral forum placed the burden on *Claimant* to prove that she had *not* reached MMC at the time of her surgery: "there is no credible medical evidence in the record that the Claimant's back condition will improve with additional medical treatment. Any further treatment will only be palliative in nature." *Id.*

Seventh, and perhaps most egregiously, the *Final Award* completely failed to address the fact that Respondent is and was required by law to pay for Claimant's back surgery. The Tribunal held that the back surgery was palliative medical treatment. At the time of the back surgery, Respondent was providing Claimant Maintenance and Cure benefits for her other, separate medical problems. Plaintiff was entitled to any palliative medical care until she was at overall maximum medical improvement for

12

any and all conditions. *See Delaware Bay Launch, supra; Duarte, supra; Nurkiewicz, supra*. In fact, the arbitral forum ignored the fact that Respondent had already authorized payment for Dr. Roush's back surgery.

Under any view of the *Final Award*, its findings of fact are supported by so little evidence, its conclusions of law are so egregiously mistaken and improper, and it is so glaringly incomplete that its refusal to award Cure benefits to Claimant can only be described as arbitrary and capricious, exceeding the Arbitrator's authority.

## CONCLUSION

The arbitral forum knowingly and intentionally exceeded its authority when it forayed into the realm of medical determinations about MMC and the curative nature of Claimant's surgery. In doing so, the arbitral forum egregiously and manifestly violated almost every aspect of well-established Cure jurisprudence, doctrines which were known to and ignored by the arbitral forum. The arbitral forum's improper determinations that Claimant's surgery was not curative and that Claimant had achieved MMC were arbitrary and capricious in that they were devoid of evidentiary support, ignored contradictory evidence, employed improper legal standards, and improperly reversed the burdens of proof. The *Final Award* does not even address Claimant's right to recover her surgery expenses in light of her ongoing Maintenance and Cure benefits for different medical issues. Finally, the *Final Award* contravenes well established, centuries-old public policies

of the United States which require forums to protect seamen as their wards and to resolve all doubts regarding entitlement to Cure in the seaman's favor.

WHEREFORE, Claimant respectfully requests this Court to enter an order which vacates the *Final Award.*

## SIGNATURE and CERTIFICATE OF SERVICE

I certify that on July 10, 2018, I filed the foregoing document with the Clerk to the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached service at the email address specified, both by transmission of Notices of Electronic Filing generated by CM/ECF and by directly emailing the document to them.

DATED THIS 10th day of July, 2018.

BILLERA LAW, PLLC.
2201 N.W. Corporate Blvd., Suite 200
Boca Raton, FL 33431
Tel: 561-218-4639
Fax: 561-826-7847

By: __/s/ John Billera_____
JOHN F. BILLERA, ESQ.
Florida Bar No.: 869041
Attorneys for PLAINTIFF
john@billeralaw.com

## SERVICE LIST

MASE LARA, PA, *Attorneys for Respondent*:

Curtis J. Mase, Esq.        cmase@maselara.com
Scott P. Mebane, Esq.       smebane@maselare.com

14

Motion to Vacate Arbitration Award

| | |
|---|---|
| Eric Hayden, Esq. | ehayden@maselara.com |
| Kathleen Fehr | kfehr@maselara.com |
| Connie Toth | ctoth@maselara.com |
| Ruthie Coakley | rcoakley@maselara.com |
| Mase Lara Filing | filing@maselara.com. |