UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:18-cv-22774-WILLIAMS/TORRES

SHERA HODGSON WILLIAMS,

    Plaintiff,

vs.

NORWEGIAN CRUISE LINES
(BAHAMAS) LTD.,

    Defendant,
                                  /

## DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD AND CROSS-MOTION TO CONFIRM ARBITRATION AWARD

Defendant, NCL (BAHAMAS) LTD. ("Norwegian"), by and through undersigned counsel, responds in opposition to Plaintiff Shera Hodgson Williams' ("Claimant") motion to vacate arbitration award, cross-moves to confirm the arbitration award, moves for sanctions based on Claimant's frivolous motion to vacate the arbitration award,[1] and states:

### Introduction

Claimant, a former crewmember onboard Norwegian's cruise ships, arbitrated a personal injury dispute against Norwegian, resulting in a defense award for Norwegian. This was an international arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). Claimant, obviously unhappy with the result, seeks to have this Court vacate the award. Claimant generally complains that the arbitrator reached the incorrect result, although she tries to couch same under the terms of the Convention and Federal

---

[1] Norwegian has combined its response to Claimant's motion with its own motion to confirm the award in one pleading to conserve judicial and party resources because the arguments largely overlap.

Arbitration Act. That a party does not agree with the result is not a basis to vacate an arbitration award. The arbitrator made credibility and factual determinations, as she was tasked to do, and determined that Claimant's claims lacked merit. This Court is not a forum for aggrieved arbitration participants to obtain a do-over. This Court should deny Claimant's motion, confirm the award, and grant Norwegian attorney's fees and costs as a sanction for having to respond.

## The Arbitral Proceedings and Final Award

Claimant's employment with Norwegian was subject to certain terms and conditions, including mandatory arbitration. The parties' arbitration agreement provided that:

> ARBITRATION – The Seafarer agrees, on his own behalf and on behalf of his heirs, executors, and assigns, that any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seafarer's shipboard employment with Company including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, un-seaworthiness, wages, or otherwise, no matter how described, pleaded or styled, and whether asserted against Company, Master, Employer, Ship Owner, Vessel or Vessel Operator, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ("The Convention"), except as otherwise provided in any government mandated contract, such as the Standard POEA Contract for Seafarers from the Philippines. The arbitration shall be administered by the American Arbitration Association ("AAA") under its International Dispute Resolution Procedures. No dispute may be joined with another lawsuit, or in arbitration with a dispute of any other person, or resolved on a class-wide basis.
>
> A single Arbitrator is to be jointly appointed by the NSU and/or the Seafarer, on one side, and Company, on the other side, unless the parties cannot agree to an Arbitrator, in which case the AAA shall select the Arbitrator from among six (6) names, three submitted by the NSU/the Seafarer and three submitted by Company. The language of the arbitration shall be English. The place of the arbitration shall be the Seafarer's country of citizenship, unless arbitration is unavailable under The Convention in that country, in which case, and only in that case, said arbitration shall take place in Nassau, Bahamas. The substantive law to be applied to the arbitration shall be the law of the flag state of the vessel.
>
> Each party will, upon the written request of the other party, promptly provide the other with copies of documents relevant to the issues raised by any claim or counterclaim on which the producing party may rely in support of or in opposition to any claim or defense. Any dispute regarding discovery, or the relevance or scope thereof, shall be determined by the arbitrator according to the IBA Rules on the Taking of Evidence in International Commercial Arbitration, which determination shall be conclusive. All discoveries shall be completed within sixty (60) days following the appointment of the arbitrator. At the request of a party, the arbitrator shall have the discretion to order examination by deposition of witnesses to the extent the arbitrator deems such additional discovery relevant and appropriate. Depositions shall be limited to a maximum of six (6) per party and shall be held within thirty (30) days of the making of a request. Additional depositions may be scheduled only with the permission of the arbitrator and for good cause shown. Each deposition shall be limited to a maximum of three (3) hours duration. All objections are reserved for the arbitration hearing except for objections based on privilege and proprietary or confidential information.
>
> The Company and the Seafarer acknowledge that they voluntarily and knowingly waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. In addition, the NSU, Seafarer, and the Company agree that the Arbitrator shall have exclusive authority to resolve any claims, grievances, and disputes relating to the validity and enforceability of the arbitration provision of this Agreement, as well as any and all disputes relating to the location of the arbitration, applicable choice of law, and the procedures and rules employed during the arbitration. Lawsuits or other proceedings between the Seafarer and the Company may not be brought except to enforce a decision of the Arbitrator. The Seafarer shall continue to satisfactorily and in good faith perform his/her duties and the parties shall abide by this Agreement while disputes or grievances are being resolved.

[Employment Agreement, attached as Exhibit 1].

Claimant alleged that she suffered a back injury as a result of a slip-and-fall accident in 2013. She claimed that she underwent a back surgery as a result. The parties arbitrated this

dispute in Miami before arbitrator Melvia Green, a well-respected former trial and appellate judge. Arbitrator Green applied U.S. general maritime law to the dispute. The final hearing consisted of live and video witness testimony over three days. [Transcript of Final Hearing, attached as Exhibit 2[2]]. The parties essentially engaged in a trial before Arbitrator Green. As the transcript makes very clear, Claimant was not a particularly believable witness and Arbitrator Green rightly surmised that this was a manufactured claim.

Claimant was of multiple minds regarding how her alleged injury occurred. Claimant reported to the ship's medical center in July 2013, telling the doctors she had back pain for two to three days at that point. [T. 413]. Claimant never reported a slip or trip, but that there was a gradual onset in back pain. [T. 418]. She specifically denied any acute trauma. [T. 418]. After a referral to a shoreside orthopedic surgeon, Claimant indicated that she had upper back pain and occasional low back pain from standing and carrying trays as a server. [T. 419-21]. Physical therapy helped Plaintiff and she even noted she was pain free at one point. [T. 423].

Claimant did not complain of back pain again for another year. [T. 424]. She again never mentioned a slip or trip incident as the root cause. This is not because Claimant is a poor medical historian. For instance, she was careful to always tell her treating doctors that she was allergic to seafood. [T. 429]. If she suffered a traumatic injury as the result of an accident, she would have told someone.

Only after being terminated by Norwegian and hiring an attorney did Claimant's story begin to change. Her first attorney referred her to an orthopedic surgeon in Miami. Claimant told the surgeon that she slipped and fell backwards while carrying trays. [T. 439]. Claimant had a normal neurological examination, no weakness, no sensory loss, and no sciatic pain down her leg. [T. 13]. Claimant discharged her first attorney.

---

[2] Citations to the Transcript will be made by "T." and the corresponding page number.

CASE NO.: 1:18-cv-22774-WILLIAMS/TORRES

After retaining her current attorney, Claimant then saw orthopedic surgeon, Dr. Thomas Roush. [T. 440]. Dr. Roush has performed surgery on "somewhere plus or minus 10 or 12" of Claimant's attorney's clients. [T. 157-58]. Claimant told Dr. Roush that she slipped but did not fall while lifting multiple heavy trays. [T. 100]. She reported 8/10 low back pain radiating into her left leg. [T. 103]. Just two weeks after her last examination with another provider where she reported improvement, Claimant now had weakness, loss of sensation, and a limp. [T. 213]. Claimant's overnight deterioration was no surprise for a claim in litigation. Dr. Roush immediately told Claimant she was a surgical candidate and never offered her any conservative treatment. [T. 388].

Dr. Roush performed a microdiscetomy on Claimant, removing four to five percent of her disc between her L5 and S1 vertebrae at a total cost of over $87,000. [T. 110-11; 398]. Claimant did not improve following surgery with Dr. Roush, and she testified she still experienced pain symptoms. [T. 205-06]. Claimant had already responded well to conservative treatment, and the surgery ultimately did not resolve her symptoms. [T. 211].

Dr. Amar Rajadhyasksha was Norwegian's board-certified orthopedic surgeon expert. He performed a medical examination of Claimant. He testified that Claimant's surgery was not medically necessary or indicated because Claimant simply suffered from a degenerative disc condition. [T. 200]. Claimant's MRIs showed early signs of disc degeneration, but no nerve root compression, nerve irritation, or spinal canal narrowing. [T. 203].

In a 20 page reasoned opinion ("the Award"), Arbitrator Green rightly determined that Claimant's surgery was not medically indicated or necessary and that Claimant's testimony regarding her accident was wholly unbelievable. [Award, attached as Exhibit 3]. Claimant

testified that she slipped in a salad dressing spill that was over one-and-a-half feet in diameter, essentially an entire bottle of salad dressing randomly on the ground. [Tr. 359]. She, of course, testified she told her supervisor, but conveniently could not remember his or her name. [T. 361].

Arbitrator Green also determined that no additional medical treatment would cure Claimant's back pain. [Exhibit 3 p. 13]. Any further care would be palliative in nature and outside Norwegian's maintenance and cure obligations.[3] [Exhibit 3 p. 13]. Claimant was at maximum medical cure.

As outlined in the Award, Arbitrator Green made factual findings and determinations as any finder of fact would be required to do in this case and authorized to do by the parties' arbitration agreement. She stated that her findings were:

> based upon the testimony and documentary exhibits presented at Final Hearing as well as the post-hearing written submissions of the parties. To the extent these findings differ from any party's position, that is the result of the determinations made by the undersigned Arbitrator as to credibility and relevance, burden of proof considerations, legal principles, and weight of the evidence, both written and oral.

[Exhibit 3 p. 2]. Unsatisfied with the result and seeking a second bite at the apple, Claimant brings this challenge to the Award.

## **Memorandum of Law**

There is no basis to vacate the Award; it must be confirmed. Courts may vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Limited judicial review "maintains arbitration's essential virtue of resolving disputes straightaway." *Id*. "If parties could take 'full-bore legal and evidentiary appeals' arbitration

---

[3] Maintenance and cure refers to the duty on the part of a seaman's employer pursuant to the contract of employment with its seamen to provide lodging, meals, and necessary medical attention for those seamen who are injured or become ill while in the service of the vessel. *The Osceola,* 189 U.S. 158, 23 S. Ct. 483 (1903), *Calmar S.S. Corp.* v. *Taylor,* 303 U.S. 525, 58 S. Ct. 651 (1938).

would become 'merely a prelude to a more cumbersome and time-consuming judicial review process." *Id*. (quoting *Hall Street Assoc., LLC v. Mattell, Inc.*, 552 U.S. 576, 588 (2008)). "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law.'" *AIG Baker Sterling Heights, LLC v. Am. Multicinema, Inc.*, 5087 F.3d 995, 1001 (11th Cir. 2007).

"The party seeking to vacate an arbitration award must show that the award falls into one of the statutory bases for vacatur." *Triangulo Pisos E Paineis, LTDA v. BR-111 Import & Exports, Inc.*, 487 F. App'x 558 (11th Cir. 2012). The statutory bases to vacate arbitration awards "provide exclusive regimes" for review. *Hall Street*, 552 U.S. at 590; *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313 (11th Cir. 2010). Judicially-created bases for vacatur, such as "arbitrary and capricious" or in "manifest disregard of the law" are no longer valid after *Hall Street*. *Frazier*, 604 F.3d at 1323.

The seven enumerated defenses in Article V of the Convention supply the exclusive grounds to set aside a foreign arbitral award. *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1442 n.8 (11th Cir. 1998). Section 207 of Chapter 2 of the Federal Arbitration Act explicitly requires that a federal court "shall confirm an international arbitral award unless it finds one of the grounds for refusal or deferral of enforcement of the ward specific in the New York Convention." *Id*. at 1446.

The Convention provides:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

*Industrial Risk Insurers*, 141 F.3d at 1442 n.8. "The Convention does not, however, include a defense against enforcement of an award on the ground that the award is 'arbitrary and capricious.'" *Id.*[4] The "Convention's public policy defense should be construed narrowly and

---

[4] Like foreign awards, domestic arbitral awards are also subject to vacatur only pursuant to a statutory basis for same. *Hall Street*, 552 U.S. at 590. Section 10 permits vacatur of arbitration awards only in four narrow circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

applies where enforcement of the award would violate the forum state's most basic notions of morality and justice." *Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1241 (S.D. Fla. 2011). "Erroneous legal reasoning or misapplication of the law is generally not a violation of public policy within the meaning of the Convention." *Id*. (citing *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negra*, 364 F.3d 274, 306 (5th Cir. 2004)).

Claimant contends that the arbitration award should be set aside under section 10(a)(4) of the Federal Arbitration Act because the arbitrator exceeded her powers or Article V(1)(c) of the Convention because the Award "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration[.]" Claimant has not come close to establishing this basis for vacatur.

"A party seeking relief under that provision bears a heavy burden. 'It is not enough . . . to show that the arbitrator committed an error—or even a serious error.'" *Id*. (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). Only if the arbitrator acts outside the scope of her contractually delegated authority—"issuing an award that simply reflects her own notions of economic justice rather than drawing its essence from the contract"—may a court overturn her determination. *Id*. at 569. "A holding in an arbitration award that is contrary to the substantive law governing the arbitration is not a defense under the Convention, and therefore a district court generally may not review an arbitration award on the merits." *Four Seasons Hotels and Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1369 (S.D. Fla. 2009).

---

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a). The Eleventh Circuit has never specifically held that section 10's defenses also apply to foreign arbitral awards, but it has applied same without deciding the issue because certain of the defenses are similar. *Bamberger Rosenheim, Ltd., (Israel) v. OE Dev., Inc., (United States)*, 862 F.3d 1284 n.2 (11th Cir. 2017).

Claimant's challenges all focus around the merits of this case and Arbitrator Green's credibility and factual determinations. First, the scope of the parties' agreement provided her authority to rule on "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seafarer's shipboard employment with Company including but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, un-seaworthiness, wages, or otherwise, no matter how described pleaded or styled." [Exhibit 1]. Arbitrator Green clearly had the authority to dispose of Claimant's maintenance and cure claim and make the factual determinations necessary for same. This Court's analysis needs go no further.

Claimant contends that the Award improperly determined she was at maximum medical cure because only a physician can make such a determination. Claimant's contention is incorrect, but also not a basis to vacate the award. A crewmember is entitled to payment for medical expenses in the amount necessary to bring her to maximum cure. *Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1127 (11th Cir. 1995). Cure is the seaman's right to necessary and appropriate medical services. *Edmond v. Offshore Specialty Fabricators, Inc.*, 2009 WL 1459701, *2 (E.D. La. May 26, 2009). Medical expenses relating to the seaman's cure must be reasonable. *Caulfield v. AC &D Marine, Inc.*, 633 F.2d 1129 (5th Cir. 1981). The "purpose of cure is purely compensatory and restricts a seaman's recovery to only out-of-pocket 'cure' expenses." *Moran Towing & Transp., Co. v. Lombas*, 58 F.3d 24, 26 (2d Cir. 1995) (quoting *Al-Zawkari v. Am. S.S. Co.*, 871 F.2d 585, 588 (6th Cir. 1989)).

The fact-finder is always in the position to interpret the maintenance and cure duty. *See Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962). Where there are ambiguities regarding maintenance and cure, they must necessarily be resolved by the fact-finder. *See id*. The

maximum medical cure determination issue is typically resolved via competing evidence among medical experts. *Lemmer v. Urban Elec., Inc.,* 947 So. 2d 1196, 1198 (Fla. Dist. Ct. App. 2007). The fact-finder resolves the maximum medical cure question via evidence. *Royal Caribbean Cruises, Ltd. v. Rigby*, 96 So. 3d 1146, 1148 (Fla. Dist. Ct. App. 2012); *see also Gabriel v. Disney Cruise Line*, 93 So. 3d 1121 (Fla. Dist. Ct. App. 2012) (maximum medical cure determination presents question of fact).

While maximum medical cure is a medical question, it is still a question of fact that a fact-finder must resolve. Arbitrator Green properly did that. She considered evidence from Claimant, Dr. Roush, Dr. Amar, and medical records to arrive at her conclusion. That Claimant contends the conclusion was incorrect is not a basis to vacate the Award. Claimant's motion tacitly acknowledges this in her second point as she contends the Award did not resolve ambiguities in her favor to the extent it did so. This, again, is nothing more than sour grapes.

It is well-established that an incorrect legal conclusion is never grounds to vacate an arbitration award. *Southern Comm'n Servs., Inc. v. Thomas*, 720 F.3d 1352, 1358 (11th Cir. 2013). Nor is misapplication of the burden of proof. *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2011 WL 7459781, *12 (M.D. Fla. Dec. 20, 2011) ("Whether or not the Arbitration Panel applied the proper burden of proof under Illinois law is immaterial to the Court's inquiry.") (citing *Frazier*, 604 F.3d at 1323-24); *Rai v. Barclays Capital, Inc.*, 739 F. Supp. 2d 364, 376 (S.D.N.Y. 2010). Neither, of course, are present here.

Claimant's next contends that Arbitrator Green ignored her duty under U.S. general maritime law "to protect Claimant as a ward of admiralty." [ECF No. 1 p. 11]. Claimant does not explain this point further. This is another claim that Arbitrator Green misapplied the controlling law, which is never a basis to vacate an arbitration award and does not amount to a violation of

U.S. public policy. Along these lines again, Claimant next argues that Arbitrator Green substituted her own judgement that Claimant's surgery was palliative in nature. Continuing on these same lines, Claimant lastly contends that Arbitrator Green improperly determined she was at maximum medical cure and that her surgery was unnecessary. Dr. Amar testified that the surgery was not medically necessary or indicated, and that Claimant should have pursued conservative treatment. The only conclusion that could have been drawn in this case is that Claimant's surgery was litigation-driven and totally unnecessary. Not surprisingly, Claimant still complained of pain following surgery. Claimant contends that Arbitrator Green mistakenly looked at this evidence to determine the surgery was palliative, but again, this was evidence before the Tribunal. A determination that the surgery was palliative and unnecessary was well within her province as fact-finder.

The Award must be confirmed. The Court must "confirm the Final Award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said New York Convention." *Risk Insurers*, 141 F.3d at 1442; *Inversiones y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l GmbH*, 2017 WL 1737648, *3 (S.D. Fla. May 2, 2017). Claimant has not established any basis under the Convention to vacate the Award. Indeed, there is none. As such, it must be confirmed.

### Claimant Should be Sanctioned for Filing this Frivolous Motion to Vacate

Claimant's motion to vacate is frivolous. Courts in the Eleventh Circuit impose sanctions on parties that pursue meritless challenges to arbitration awards. *Gonsalvez v. Celebrity Cruises, Inc.*, 935 F. Supp. 2d 1325, 1334 (S.D. Fla. 2013). Litigants are subject to sanctions where they "attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards". *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905,

914 (11th Cir. 2006). "[I]t may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." *Dunn v. Citigroup Global Markets, Inc.*, 2011 WL 13227889, *3 (S.D. Fla. July 15, 2011) (quoting *Harbert*, 441 F.3d at 913); *see also World Business Paradise, Inc. v. Suntrust Bank*, 403 F. App'x 468 (11th Cir. 2010) (affirming sanctions against party that unsuccessfully sought to vacate an arbitration award).

The bad faith in Claimant's motion is obvious. Claimant contends that "this Court may refuse to enforce an arbitration award when the award in question contains manifest legal error, or it is an arbitrary and capricious decision." [ECF No. 1 p. 3]. This is an incorrect statement of law following the Supreme Court's *Hall Street* decision which Claimant failed to cite or raise. Indeed, Claimant buried in a footnote that the Eleventh Circuit had already rejected these judicially-created bases for vacatur in *Frazier*. [ECF No. 1 p. 3 n. 1]. Claimant contends that *Frazier* was an invalid panel decision, but it simply noted that *Hall Street* had overruled prior inconsistent decisions. Multiple times in Claimant's motion she contends that the Award was arbitrary, capricious, and a manifest legal error. These are not bases to vacate the award even if they were present here.

Claimant contends that only medical professionals can determine when a seafarer reaches maximum medical cure. The Supreme Court in *Vaughan* specifically noted that the fact-finder resolves the issue, but based on medical evidence. Using Claimant's logic, is unclear how a court or tribunal could ever resolve a maintenance and cure case unless a doctor presided. Fact-finders routinely are required to resolve medical issues informed by medical testimony and evidence. *See Wingster v. Head*, 318 F. App'x 809, 815-16 (11th Cir. 2009). Claimant simply does not like Arbitrator Green's determination.

CASE NO.:  1:18-cv-22774-WILLIAMS/TORRES

"When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken." *Hercules Steel*, 441 F.3d at 913. Plaintiff raises no objectively reasonable basis to vacate the Award, instead combining an amalgam of theories that, boiled down, simply challenge the merits of the Award. Claimant's motion is frivolous, and she should be sanctioned for wasting this Court's and the parties' time and resources.

## Conclusion

This Court should deny Claimant's motion to vacate the Award, should confirm the Award, and should award Norwegian attorneys' fees and costs as a sanction for having to respond to Claimant's motion to vacate the Award.

Respectfully submitted,

MASE MEBANE & BRIGGS, P.A.
*Attorneys for*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080


By:     /s/ *Cameron Eubanks*
         SCOTT P. MEBANE
         Florida Bar No. 273030
         smebane@maselaw.com
         CAMERON W. EUBANKS
         Florida Bar No. 85865
         ceubanks@maselaw.com

CASE NO.: 1:18-cv-22774-WILLIAMS/TORRES

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2018, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Cameron Eubanks*
CAMERON W. EUBANKS

## SERVICE LIST

**John Fitzgerald Billera, Esq.**
Billera Law, PLLC
2201 NW Corporate Blvd., Suite 103
Boca Raton, FL 33431
Tel: (561) 218-4639
Fax: (561) 826-7847
John@billeralaw.com
*Attorneys for Plaintiff*

18981/#494