**Catering Personnel**

Elenita Quizon 1/24/15
Payroll Accountant

NCL (Bahamas) Ltd. d/b/a Norwegian Cruise Line, ("Company" or "Employer") located at 7665 Corporate Center Drive, Miami, Florida, 33126, USA agrees to employ Hodgson, Shera, ("Seafarer") in the capacity set forth below, for the consideration and under the terms and conditions hereinafter stated, and "Seafarer" agrees to be so employed and to abide by the terms and conditions of this Seafarer's Employment Agreement ("Agreement") and the Collective Bargaining Agreement ("CBA") for Catering Personnel and Key Personnel.

## PERSONAL INFORMATION

| Last Name | First Name | Middle Name |
|---|---|---|
| Hodgson | Shera | |

☐ New Hire   ☐ Rehire   ☐ Transferring   ☒ Returning

**Address**

| Beholden Neighborhood behind Denmark School |
| Bluefields Nicaragua |

| Telephone Number | Personal Email Address |
|---|---|
| 22673174 | blessedshera1983@yahoo.com |

| Date of Birth | Place of Birth |
|---|---|
| 10/16/1983 | Bluefields-NIC |

| Marital Status | Nationality | Sex |
|---|---|---|
| Single | NIC | Female |

| Height | Weight | Eye Color |
|---|---|---|
| 5-11 | 190 | Brown |

**EMERGENCY CONTACT NAME** | **Emergency Contact Number**
---|---
Evans Taylor | 505 257 22290

**Emergency Contact Address**

Beholden Neighborhood Bluefields Nicaragua

## DOCUMENTATION

| Passport # | Passport Exp. Date | Home Airport |
|---|---|---|
| c01321207 | 10/04/2022 | MGA |

| Visa Type | Visa Exp. Date |
|---|---|
| C1D | 10/15/2017 |

| ARC #, if applicable | Social Security #, if applicable |
|---|---|
| | |

## SIGN ON/OFF INFORMATION

| Position | Department |
|---|---|
| Assistant Waiter | Restaurant |

**To Serve Initially On Board The:**
Norwegian Pearl

**First Hire Date**
10/29/2012

| Sign On Port (subject to change) | Sign On Date (subject to change) |
|---|---|
| Miami, Florida | 01-24-2015 |

| Sign Off Port | Scheduled Sign Off Date |
|---|---|
| TBD | 09-27-2015 |

## SALARY INFORMATION

| Salary Per Month | Pay Effective Date |
|---|---|
| $1189 | 01-24-2015 |

**Where applicable, formula used for calculating monthly salary:**
Seafarer's monthly wage calculation in accordance with said CBA, Annex 1.

**OTHER AGREEMENTS OR SPECIAL CONDITIONS**

---

1. The Seafarer shall be initially employed on board the ship stated above. The Seafarer and the employment relationship established hereunder shall at all times be subject to and governed by the CBA, and the Employer's written policies concerning drug and alcohol use, sexual harassment, and complaint resolution process. The CBA is collectively bargained for by the Norwegian Seafarer's Union and covers the employment relationship established herein notwithstanding whether the Seafarer is a member of the Norwegian Seafarer's Union and any subsequent Protocol entered into between Employer and the Norwegian Seafarer's Union. The Seafarer understands that the Norwegian Seafarer's Union bargains for and on behalf of all Seafarers and enters into a collective bargaining agreement or Protocol at regular intervals with the Employer whereby the terms of employment and various benefits are determined. The Seafarer understands and agrees that with respect to the Employer's obligations under general maritime law in the event of injury or illness, the terms of the CBA control and the Seafarer will be provided with benefits, including unearned wages, maintenance, cure and medical care, board and lodging (if applicable), burial expenses (where applicable) and will be compensated in accordance with said CBA.
2. The Seafarer acknowledges that he/she has had an opportunity to examine and seek advice of said Agreement and CBA before signing on the vessel. The Seafarer understands and agrees that the Sign On Date and Sign On Port are subject to change.
3. The Seafarer understands and agrees that he/she shall be subject to being transferred to any other ship now or hereafter operated, owned or managed by the Employer.
4. Notice of termination of the employment relationship hereunder (except for termination for cause) shall be in accordance with said CBA, Article 3.1
5. The first ninety (90) days of the contract period for new hires shall be considered a probationary period, which entitles Norwegian or its representative to terminate the Agreement by giving seven (7) days' notice, or seven (7) days' pay in lieu of notice, which shall consist of the Seafarer's Monthly Guaranteed Pay prorated for seven (7) days. (CBA, Article 3). The normal working hours will be set by Employer in accordance with the CBA.
6. The Seafarer understands that upon successful completion of Agreement, the Company shall repatriate at no cost to the Seafarer.
7. Wages will be paid once a month in U.S.D. currency. All shipboard accounts of Seafarer, e.g., bar bill, shop bills, etc., must be settled in full prior to Seafarer disembarking the ship. Any outstanding amount will be deducted from Seafarer's paycheck.
8. The Company shall give a monthly account of the payments due and the amounts paid, including wages, additional payments and the rate of exchange used where the payment has been made in a currency or at a rate different from the one agreed to.
9. The Company shall provide the Seafarer with a means to transmit all or part of their earnings to their families or dependents or legal beneficiaries. Where applicable, any charges for such transmissions including the currency exchange rates shall be at the market rate or the official published rate.
10. n/a
11. If the ship on which the Seafarer serves is sold, laid up, or suffers a total or constructive loss, or if a voyage cannot be undertaken or continued because of Acts of God, war, rebellion, insurrection, embargo, blockade, or similar matters, the Company or its agent shall have the option either to terminate this Agreement at once upon payment of wages and severance due, if any, or to transfer the Seafarer to any vessel under the same Management/Operation. Traveling expenses in these cases shall be paid by the Company.
12. No Seafarer shall be allowed to bring onboard persons not belonging to the ship's complement or crew without the express prior permission of the Master or the Company. The Seafarer is subject to random drug and alcohol test. Any violation of the ship's rules and regulations or other offenses including, without limitation, disobedience to any lawful command, breach or neglect of duty, fraud, intoxication, scandal, aggression, conviction of a crime, or leaving the vessel or duty station without permission will also be disciplined as provided in the Employer's Complaint Resolution Process. The Merchant Shipping Act, 1976 of the Bahamas or by dismissal without notice and shall be deemed willful misconduct. All repatriation expenses of the dismissed Seafarer shall be the responsibility of the dismissed Seafarer.
13. The Seafarer certifies that all the information he provided and disclosed on his Application for Employment and the Seafarer's Medical Certificate is true and complete in every respect, and further agrees that if the information he provided therein was inaccurate or incomplete, the Seafarer may not be allowed to join the vessel and/or his employment may be terminated in the Employer's discretion and the Seafarer shall be solely responsible for all repatriation expenses.
14. The Seafarer guarantees that no circumstances exist which would hinder him/her from obtaining the necessary documents and visas required for travel to and from vessels located worldwide.

15. If the Seafarer is discharged for cause, the seafarer shall pay all expenses arising out of his/her discharge and all wages and benefits including leave are subject to forfeit.
16. n/a
17. In the event that any part of this Agreement is found to be unenforceable, or null and void, such findings shall not affect any other parts of this Agreement not expressly found to be unenforceable. All parts of this Agreement not specifically found to be unenforceable shall remain in full force and effect.
18. The Company shall consider a special request of early termination of the service period on compassionate grounds. If such request for early termination is granted in the case of death or serious illness in the Seafarers immediate family, reimbursement for repatriation costs will be at the Company's discretion.
19. The Seafarer hereby expressly waives all physician/patient confidentiality and hereby specifically authorizes any physician, hospital, physical therapist, psychologist, psychiatrist and any other health care provider of any nature whatsoever who has provided care to the Seafarer to release to any authorized representative of Employer any medical record, chart, note, report, test result, or any other document regarding the care and treatment of the Seafarer. The Seafarer further authorizes any health care provider to discuss his or her care, treatment and prognosis with any authorized representative of Employer.
20. The Seafarer shall be provided with a copy of the Onboard Complaint Procedure and Shoreside Complaint Procedure as part of the CBA.
21. ARBITRATION – The Seafarer agrees, on his own behalf and on behalf of his heirs, executors, and assigns, that any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seafarer's shipboard employment with Company including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, un-seaworthiness, wages, or otherwise, no matter how described, pleaded or styled, and whether asserted against Company, Master, Employer, Ship Owner, Vessel or Vessel Operator, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ("The Convention"), except as otherwise provided in any government mandated contract, such as the Standard POEA Contract for Seafarers from the Philippines. The arbitration shall be administered by the American Arbitration Association ("AAA") under its International Dispute Resolution Procedures. No dispute may be joined with another lawsuit, or in arbitration with a dispute of any other person, or resolved on a class-wide basis.
A single Arbitrator is to be jointly appointed by the NSU and/or the Seafarer, on one side, and Company, on the other side, unless the parties cannot agree to an Arbitrator, in which case the AAA shall select the Arbitrator from among six (6) names, three submitted by the NSU/the Seafarer and three submitted by Company. The language of the arbitration shall be English. The place of the arbitration shall be the Seafarer's country of citizenship, unless arbitration is unavailable under The Convention in that country, in which case, and only in that case, said arbitration shall take place in Nassau, Bahamas. The substantive law to be applied to the arbitration shall be the law of the flag state of the vessel.
Each party will, upon the written request of the other party, promptly provide the other with copies of documents relevant to the issues raised by any claim or counterclaim on which the producing party may rely in support of or in opposition to any claim or defense. Any dispute regarding discovery, or the relevance or scope thereof, shall be determined by the arbitrator according to the IBA Rules on the Taking of Evidence in International Commercial Arbitration, which determination shall be conclusive. All discoveries shall be completed within sixty (60) days following the appointment of the arbitrator. At the request of a party, the arbitrator shall have the discretion to order examination by deposition of witnesses to the extent the arbitrator deems such additional discovery relevant and appropriate. Depositions shall be limited to a maximum of six (6) per party and shall be held within thirty (30) days of the making of a request. Additional depositions may be scheduled only with the permission of the arbitrator and for good cause shown. Each deposition shall be limited to a maximum of three (3) hours duration. All objections are reserved for the arbitration hearing except for objections based on privilege and proprietary or confidential information.
The Company and the Seafarer acknowledge that they voluntarily and knowingly waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. In addition, the NSU, Seafarer, and the Company agree that the Arbitrator shall have exclusive authority to resolve any claims, grievances, and disputes relating to the validity and enforceability of the arbitration provision of this Agreement, as well as any and all disputes relating to the location of the arbitration, applicable choice of law, and the procedures and rules employed during the arbitration. Lawsuits or other proceedings between the Seafarer and the Company may not be brought except to enforce a decision of the Arbitrator. The Seafarer shall continue to satisfactorily and in good faith perform his/her duties and the parties shall abide by this Agreement while disputes or grievances are being resolved.

### Seafarer Acknowledgment

I, the undersigned Seafarer, declare that I have read and understood the terms of this Agreement and that no oral promises or other agreements have been made to me and that I cannot claim and am not entitled to any additional benefits of any kind whatsoever except those provided in this Agreement. I declare that the Application for Employment and Seafarer's Medical Certificate, previously filled out and signed, is true and correct in every respect and that, as part of my Employment Agreement, I agree to abide by the Conditions set forth in the Ship's Article and by such Company rules and regulations that are in effect from time to time.

I, the undersigned, have received and signed copies of the CBA, Drug and Alcohol Policy for Shipboard Personnel, Complaint Resolution Process Policy, and Sexual Harassment Policy for Shipboard Personnel, and agree that I will abide by the terms and conditions contained in each.

Executed this __24th__ day of __February__ 2015__, at __Miami, FL__

Seafarer's Signature

CAPTAIN GUNNAR HAMMERIN
For and on behalf of NCL (Bahamas) Ltd. d/b/a Norwegian Cruise Line

Distribution: Signed Original to Seafarer / 1 signed copy: Onboard Personnel File / 1 signed copy: Fleet Personnel Shoreside