# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-22774-CV-WILLIAMS/TORRES

SHERA HODGSON WILLIAMS,

     Plaintiff,

v.

NCL (BAHAMAS) LTD.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO VACATE AND DEFENDANT'S CROSS MOTION TO CONFIRM ARBITRATION AWARD

There are two matters presently before the Court: a Motion to Vacate an Arbitration Award filed by Plaintiff SHERA HODGSON WILLIAMS ("Hodgson" or "Plaintiff") on July 10, 2018 [D.E. 1]; and a Cross Motion to Confirm that Arbitral Award, filed by Defendant NCL (BAHAMAS) LTD. ("NCL" or "Defendant") on July 30, 2018. [D.E. 5, 7]. Plaintiff responded in opposition to Defendant's Cross Motion on August 20, 2018, [D.E. 14], and Defendant's Reply followed on August 21. [D.E. 16].[1] The matter is now fully briefed and ripe for disposition. Following our review of the respective arguments advanced by both parties, in addition to the legal authorities governing the underlying dispute, we hereby **RECOMMEND** that

---

[1] The Honorable Judge Kathleen M. Williams entered an Order referring all dispositive matters to the undersigned for a Report and Recommendation on July 16, 2018. [D.E. 3].

Defendant's Motion be **GRANTED**, Plaintiff's Motion be **DENIED**, and the arbitral award be **CONFIRMED**.

## I.    *FACTUAL BACKGROUND*

Plaintiff is a seafarer who worked for Defendant as a restaurant steward. [D.E. ¶ 7]. She claims that in July of 2013, and during the course of her duties with the cruise line, she began experiencing back pain. The parties' disagree as to what, exactly, caused the onset of Plaintiff's back pain; Hodgson claims that she slipped on a foreign substance while carrying trays in a vessel's galley, but Defendant contends that this incident never occurred. Nevertheless, Plaintiff received medical care and underwent conservative treatment arranged for by the cruise line as part of its maintenance and cure obligation to seafaring employees.[2]

The crux of the dispute centers on a surgery performed by Dr. Thomas Roush on September 30, 2016. [D.E. 1-1, p. 11]. On that date, Plaintiff underwent a bilateral laminotomy with microdiscectomy at the L5-S1 vertebral level. *Id.* Plaintiff contends that NCL's  duty to provide maintenance and cure encompassed all costs associated with that surgery, and that the cruise line must also pay for any future care made necessary by the procedure. Defendant, on the other hand, argues that it is not

---

[2]    A claim for maintenance and cure refers to a vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving in the service of the ship. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001); *see also* 2 Robert Force & Martin J. Norris, *The Law of Seaman* § 26:1 (5th ed. 2017) ("Maintenance and cure…gives to the seaman, ill or injured in the service of the ship without willful misbehavior on his part, wages to the end of the voyage and subsistence, lodging and medical care to the point where the maximum cure attainable has been reached.").

responsible for the surgery because it was, at worst, unnecessary – and motivated by Plaintiff's retention of counsel – and, at best, elective.

Plaintiff's employment was subject to the terms and conditions of her seafarer's agreement, which contained a clause mandating that any claims or causes of action asserted by the employee against the cruise line would be subject to arbitration.[3] To that end, and seeking to have the cruise line pay for the disputed surgery, Plaintiff initiated suit against NCL, asserting causes of action for Jones Act negligence, unseaworthiness, failure to pay maintenance and cure, and recovery of disability benefits under NCL's Collective Bargaining Agreement. The case proceeded to a final hearing, which took place on December 13, 2018 in Miami, Florida and was presided over by Melvia B. Green, Esq. [D.E. 5-2].

Ms. Green heard evidence, including testimony from Plaintiff, Dr. Roush, and Defendant's medical expert, Dr. Amar Rajaddhyaksha. Following the hearing's conclusion, Ms. Green reached her decision and detailed her findings in a written Final Award (the "award"), transmitted to the parties on April 10, 2018. [D.E. 1-1]. The arbitrator found in favor of the Defendant and rejected Plaintiff's ultimate claim

---

[3]     The provision states, in relevant part, "[t]he seafarer agrees…that any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seafarer's shipboard employment with [Norwegian] including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, unseaworthiness, wages, or otherwise…shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958)." [D.E. 5, p. 2].

that the cruise line should pay for Dr. Roush's surgery. *Id.* In doing so, she made several findings of fact and conclusions of law:

> It is found that Claimant's subjective symptoms were less than credible at [the time the surgery was performed] and more likely than not influenced by this anticipated litigation. … It is noted that none of the three prior orthopedic surgeons that examined the Claimant prior to Dr. Roush [ ] found any lower extremity weakness.
>
> …
>
> In weighing the evidence in its totality, it is found that the Claimant's back surgery was not medically indicated or necessary. Credible evidence adduced at the final hearing established that the Claimant would have continued to benefit from conservative treatment, such as physical therapy, injections and/or medications, since her MRI showed no nerve root compression. Indeed, it is significantly noted that the surgery did not seemingly improve or resolve the Claimant's stated symptoms.
>
> Finally, it is found that credible medical testimony established that the Claimant has now reached maximum medical cure ("MMC") for her back pain. That is, there is no credible medical evidence in the record that the Claimant's back condition will improve with additional medical treatment, [and a]ny further treatment will only be palliative in nature.

*Id.*, pp. 12-13. The arbitrator went on to reject each of Plaintiff's asserted causes of action and denied Hodgson's claim for damages. *Id.*, pp. 12-19.

Plaintiff now challenges the award, arguing that the "forum exceeded its authority by making factual findings and reaching legal conclusions for which it had no authority." [D.E. 1, p. 1]. She further argues the award "contravenes United States public policy," and that "its holdings are arbitrary, capricious and manifestly unjust." *Id.* Defendant opposes Plaintiff's Motion and moves to confirm the award, claiming that Plaintiff has not set forth grounds that would allow us to vacate the decision.

[D.E. 5, 7]. As described further below, we find each of Plaintiff's claims in support of her Motion unavailing, and recommend that her Motion should be denied.

## II. STANDARD OF REVIEW

Agreements to arbitrate are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). The United States has acceded to the Convention, codified at 9 U.S.C. §§ 201 – 208. The Convention empowers a federal district court to recognize and enforce an action falling under the Convention. *See* 9 U.S.C. §§ 203, 207. Chapter 2 of the Federal Arbitration Act incorporates the Convention into federal law to "encourage…enforcement of commercial arbitration agreements in international contracts and [ ] unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced." *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 417 U.S. 506, 520, n.15 (1974).

A court may vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Such limited judicial review is necessary to "maintain arbitration's essential virtue of resolving disputes straightaway." *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). "If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." *Sutter*, 569 U.S. at 568 (quotations and citation omitted).

As such, a federal court should vacate an arbitral award only if a respondent can successfully assert one of the seven defenses outlined in the Convention. *See* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition of the award specified in the said Convention."). Those seven defenses are triggered only if the party seeking to avoid enforcement furnishes to the "competent authority" proof that:

> (a)     The parties to the agreement…were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b)     The party against whom the award was invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings, or was otherwise unable to present his case; or
>
> (c)     The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decision on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized or enforced;
>
> (d)     The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such an agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e)     The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that law was made.

New York Convention, 21 U.S.T. 2517, Art. V(1); *see also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011). The Convention also states that a court may refuse to recognize an arbitral award if "[t]he subject matter of the difference is

not capable of settlement by arbitration under the law of that country" or "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id.*, Art. V(2). The party defending against enforcement of the award bears the burden of proving an Article V affirmative defense applies to the case at hand. *Czarina, LLC v. W.F. Poe. Syndicate*, 358 F.3d 1286, 1294, n.3 (11th Cir. 2004).

## III. ANALYSIS

At the outset, we note that our review of the award – and Plaintiff's arguments against enforcing same – are "among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (quoting *Del Casal v. E. Airlines, Inc.*, 634 F.2d 295, 298 (5th Cir. 1981)). This limited judicial review "maintains arbitration's essential virtue of resolving disputes straightaway," *Oxford Health Plans*, 596 U.S. at 568, and we must prevent motions to vacate from turning into "full bore-legal and evidentiary appeals" of an arbitral proceeding. *Id.* (quoting *Hall St. Assocs.*, 552 U.S. at 588)).

Plaintiff asks us to vacate the award using the very type of "full-bore legal and evidentiary appeal" the law demands that we avoid. Almost every single challenge to the award involves her disagreements with legal and evidentiary determinations made by the arbitrator, including (1) the finding that the surgery with Dr. Roush was palliative in nature [D.E. 1, p. 11]; (2) that Hodgson had reached maximum medical cure for her back pain at the time the Final Hearing took place [*id.*, p. 12]; and (3) that the award purportedly relied on hearsay evidence in the form of medical records, all of which should have been excluded prior to the hearing [D.E. 14, pp. 5-8]. Her

other arguments involve the arbitrator's alleged failed to resolve all doubts and ambiguities in the seaman's favor [D.E. 1, p. 11], and the contention that NCL was *required* by law to pay for the subsequent back surgery. *Id.*, p. 12.

These arguments do not provide a sufficient basis to vacate the award. Plaintiff ignores the very nature of arbitral proceedings, which "need not follow all the niceties of the federal courts," *Grovner v. Georgia Pacific*, 625 F.3d 1289, 1290 (5th Cir. 1980) (quotations omitted), and "are not constrained by formal rules of procedure or evidence." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1443-44 (11th Cir. 1998) (citation omitted). The evidentiary and legal challenges raised in the Motion cannot form the basis for vacating the award after-the-fact; "confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm." *Chelsea Football Club Ltd. v. Mutu*, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)). Our mandate is clear: the *only* grounds to vacate the award are the seven defenses to enforcement enumerated in the Convention. *Industrial Risk Insurers*, 141 F.3d at 1445-46.

Which brings us to our next point. Plaintiff attempts to couch her arguments against enforcement into three broad categories: (1) that the arbitral panel exceeded its authority by making factual findings and reaching legal conclusions for which it had no authority; (2) that its holdings are arbitrary, capricious and manifestly unjust,

and (3) that the decision contravenes the public policy of the United States. [D.E. 1, p. 1]. We can dispose of the first category wholesale, as the arbitration agreement clearly allows for the panel to determine the issues Plaintiff claims she had no right to discuss. [*See* Arb. Agmt., D.E. 5, p. 2, stating unequivocally that grievances involving personal injury, Jones Act negligence, maintenance and cure, unseaworthiness, and wages shall be subject to arbitration]; *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) ("Any doubts concerning the scope of arbitral issues – that is, doubts over whether an issue falls within the ambit of what the parties agreed to arbitrate – should be resolved in favor of arbitration.") (quotations omitted) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-25 (1983)).

We likewise must reject the second broad challenge Plaintiff advances – that the award is somehow arbitrary, capricious, or manifestly unjust. We are bound by the Eleventh Circuit's decision in *Industrial Risk Insurers*, which summarized the issue as follows:

> [T]he appellants also argue that the arbitral award should be vacated on the ground that it is 'arbitrary and capricious.' We reject this argument as well. Under the law of this circuit, domestic arbitral awards may be vacated for six different reasons; four are enumerated by the FAA and two are non-statutory defenses against enforcement, derived by the courts from the statutory list. The two non-statutory defenses against enforcement of a domestic award are 1) that the award is 'arbitrary and capricious' and 2) that enforcement of the award would be contrary to public policy.
>
> [T]he seven defenses against enforcement of an international arbitral award that are enumerated in the New York Convention include a public policy defense. It does not, however, include a defense against enforcement of an award on the ground that the award is 'arbitrary and

capricious.' The omission is decisive. Section 207 of Chapter 2 of the FAA explicitly requires that a federal court 'shall' confirm an international arbitral award unless it finds one of the grounds for refusal or deferral of enforcement of the award specific in the New York Convention. The Convention itself provides that 'enforcement of an award may be refused, at the request of the party against whom it is invoked, *only if* the party furnishes proof' that one of the enumerated defenses is applicable. ... We therefore hold that no defense against enforcement of an international arbitral award under Chapter 2 of the FAA is available on the ground that the award is 'arbitrary and capricious,' or on any other grounds not specified by the Convention.

*Industrial Risk Insurers*, 141 F.3d at 1445-46 (quotations and citations omitted; emphasis original). Thus, we cannot vacate the arbitral award, as Hodgson urges us to do, based on Plaintiff's mistaken argument that the award is somehow "arbitrary, capricious [or] manifestly unjust"; such a defense is not available under the Convention. *Id.* ("In short, the Convention's enumerations for defenses *is exclusive*.") (emphasis added); *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Ys Inc.*, 126 F.3d 15, 20 (2d Cir. 1997) ("[T]he grounds for relief enumerated in Article V of the Convention *are the only grounds* available for setting aside an arbitral award.") (emphasis added).

Plaintiff next attempts to challenge the underlying provision included in her seafarer's agreement that required the matter to be referred to arbitration in the first place. [D.E. 14, p. 3-5]. But the arguments raised by her as to why this provision should be void – including because Plaintiff was born and raised in a foreign country, faced unequal bargaining power at the time she signed her agreement, or could not have knowingly agreed to be bound by the terms of the contract – have all been advanced and rejected in this Circuit. *See generally Lindo,* 652 F.3d at 1275 (finding

arbitration provision in a seaman's employment contract enforceable); *Bautista v. Star Cruises*, 396 F.3d 1289, 1296 (11th Cir. 2005) (limitation on arbitration agreements in the contract founds in 9 U.S.C. § 1 does not apply to contracts governed by the Convention); *Lobo v. Celebrity Cruises, Inc.*, 426 F. Supp. 2d 1296 (S.D. Fla. 2006) (enforcing arbitration clause included in seaman's written employment agreement); *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248 (S.D. Fla. 2009) (seaman's employment agreement, incorporating by reference a collective bargaining agreement that contained arbitration clause, was sufficient to grant cruise line's motion to compel arbitration). We will not disturb the long-standing precedent that find such agreements enforceable, and reject Plaintiff's request that we do so here.

Nor are we able to find that the arbitral award violates public policy. "[T]he Convention's public policy defense should be construed narrowly and applies where enforcement of the award would violate the forum state's most basic notions of morality and justice." *Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1241 (S.D. Fla. 2011) (quotation and citation omitted). Plaintiff sets forth several ways she claims the award is contrary to the public policy of the United States: (1) it failed to resolve all doubts and ambiguities in favor of the seaman, and (2) it ignored its duty to protect Plaintiff as "a ward of admiralty." [D.E. 1, p. 11]. She also makes broad assertions that her due process rights were violated as a result of the arbitrator's decision to admit what she claims constituted hearsay evidence, in addition to the weight afforded other evidence introduced at the hearing.

As above, we reject the evidentiary arguments that Plaintiff sets forth here. Evidentiary decisions are not grounds to refuse confirmation of an arbitral award under the New York Convention's public policy defense. *See Costa*, 768 F. Supp. 2d at 1241 ("Erroneous legal reasoning or misapplication of the law is generally not a violation of public policy within the meaning of...the Convention."); *Unrvneshprom State Foreign Econ. Enterprise v. Tradeway, Inc.*, 1996 WL 10728085, at *6 (S.D.N.Y. Mar. 12, 1996) (stating an arbitrator's "refusal to consider evidence of [a party's] counterclaims" did not "satisfy the narrow scope of Article V(2)(b) defense under the United States public policy."). It appears from our review of the record that the arbitrator admitted *all* evidence – both favorable and unfavorable to Plaintiff *and* Defendant – before reaching her decision. In doing so, she did not somehow rob Plaintiff of an opportunity to present her case to the point where the award "violate[d] the forum state's most basic notions of morality and justice," *Costa*, 768 F. Supp. 2d at 1241, but instead allowed both parties to present each side's entire case before reaching her decision. We see no error here.

Plaintiff's other arguments are also unavailing. While it is true that seamen are "wards of admiralty," and that doubts should be resolved in their favor, Plaintiff appears to interpret these protections to mean that any time a crewmember is injured, he or she *must* be allowed to recover as a matter of law. This is incorrect: such favorable treatment first requires that an ambiguity actually be found. *See Vaughan v. Atkinson*, 369 U.S. 527, 533 (1962). The arbitrator clearly felt that no such ambiguity existed, and that the surgery with Dr. Roush – and any maintenance

and cure claim that stemmed from same – was unnecessary. *See generally* Final Award, D.E. 1-1. Thus, there would be nothing to "resolve" in Plaintiff's favor. *See Peco Foods Inc. v. Retail Wholesale and Dept. Store Union Mid-South Council*, 727 F. App'x 604, 607-08 (11th Cir. 2018) (finding that vacating an arbitration award may occur "where the contract as interpreted would violate some explicit public policy that is well defined and dominant," but cautioning that courts "are not permitted to second guess the arbitrator's findings of fact" simply because a party advances a public policy argument).

Likewise, the contention that the arbitrator should not have been allowed to determine when or how Plaintiff reached maximum medical cure is insufficient justification to vacate the award on public policy grounds. Although Plaintiff contends that the parties did not agree to submit this issue to the arbitrator, the record and the law flatly contradict this claim. The seafarer's agreement states "any disputes whatsoever," including those pertaining to maintenance and cure, will be subject to arbitration. As the law makes clear that the right to maintenance and cure "terminates only when maximum cure has been obtained," and the entire dispute centered on whether the surgery with Dr. Roush fell under NCL's maintenance and cure obligations, we reject Plaintiff's attempts to argue that the arbitrator lacked any ability to make such a declaration. *See B.L. Harbert Intern., LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006) ("Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases.") (abrogated on other grounds by *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313

(11th Cir. 2010)). To hold otherwise would allow each and every seaman in Defendant's employ to recover simply by claiming injury, without any regard for whether the claim is credible or if, as was found here, any purported surgical procedure was medically indicated; we refuse to subscribe to this interpretation on the state of the law. *See Gorum v. Ensco Offshore Co.*, 2002 WL 31528460, at *6 (E.D. La. Nov. 14, 2002) ("The *Vaughan* rule must be applied when there is *credible* medical testimony as to whether the seaman has reached [maximum medical improvement].") (emphasis added).

Most importantly, Hodgson's argument entirely ignores the strong public policy that favors private agreements to arbitrate these types of disputes. *See KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) ("The Federal Arbitration Act reflects an emphatic federal policy in favor of arbitral dispute resolution.") (quotation omitted); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that "questions of arbitrability [must]...be addressed with a healthy regard for the federal policy favoring arbitration."). Plaintiff's broad, conclusive statements about the alleged errors contained in the final award here are simply inadequate to overcome such a strong presumption.

Stated as simply as possible – and despite Plaintiff's best attempts to cloud what actually was at issue in the proceedings – the arbitrator found that Plaintiff (1) reached maximum medical improvement prior to her treatment with Dr. Roush, which (2) terminated her right to recover maintenance and cure;  but Hodgson nevertheless (3) underwent an elective surgery with Dr. Roush that had not been

medically indicated, and that this procedure (4) fell outside Defendant's maintenance and cure obligations. *See generally* Final Award, D.E. 1-1. Plaintiff's attempts to have us ignore how the arbitrator arrived at this decision – and the competent evidence supporting same – by way of conclusory statements about purported violations of "public policy" simply cannot suffice. In our view, Plaintiff's ultimate disagreement involves her disappointment with the arbitrator's final decision. We cannot and will not vacate on these grounds. *See Delta Air Lines v. Air Line Pilots Ass'n, Intern.*, 861 F.2d 665, 670 (11th Cir. 1988) ("An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference. … The offending arbitrator's award which properly results in our setting it aside must be so offensive that one is to be seen only rarely.").

Finally, we must decide whether sanctions are appropriate. *See* D.E. 5, pp. 11-13. NCL moves for sanctions based on the Eleventh Circuit's decision in *Hercules Steel Co.*, where the court stated:

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. … Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions. A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA. It is an idea worth considering.
>
> …
>
> [T]his Court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable

> to arbitration awards. The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases.

*Hercules Steel*, 441 F.3d at 905. Although we find that many of the arguments raised by Plaintiff are unavailing, we are unprepared to award sanctions because we are not convinced Hodgson bore an objectively unreasonable belief that she would prevail by challenging the award in this Court. *Id*. And while we have found that Plaintiffs' challenge fails on the merits, we hesitate to say that Hodgson attacked the arbitration award "without any real legal basis for doing so." *Hercules Steel*, 441 F.3d at 913. As such, we will deny Defendant's Motion for Sanctions.

In the end, "judicial review of arbitral decisions is limited," and a court must give "considerable leeway to the arbitrator, setting aside his or her decision only in narrow circumstances." *Gerson v. UBS Fin. Servs., Inc.*, 2012 WL 3962374, at *5 (S.D. Fla. Sept. 10, 2012). As the Supreme Court has noted, "[i]n bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). Here, the record provides nothing that would allow us to overturn the award or find the arbitrator's decision void as a matter of public policy. For that reason, Plaintiff's Motion to Vacate should be denied.

## IV.    CONCLUSION

For the reasons stated in the Report above, we hereby **RECOMMEND** that Plaintiff's Motion to Vacate be **DENIED**, Defendant's Cross-Motion to Confirm be **GRANTED**, and the Final Award be **AFFIRMED**. We also recommend that both parties' Motion for Sanctions be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Kathleen M. Williams, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 7th day of November, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge